IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: 5:14-CR-19 |
| v. | |
| GEORGE COVARRUBAIZ | |

### RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The Court should deny the defendant's motion to suppress 32 kilograms of narcotics (21 kilograms of cocaine and 11 kilograms of heroin) seized by law enforcement from the defendant's vehicle on February 3, 2014.  The traffic stop that led to the discovery of these drugs was based upon reasonable suspicion of unlawful conduct; the Trooper observed that the defendant's vehicle had multiple defective lights. Additionally, the search of the vehicle that followed the stop was based upon probable cause because a law enforcement canine trained to detect the scent of narcotics alerted for the presence of narcotics on the defendant's vehicle.

### FACTUAL BACKGROUND

The traffic stop in this case was not the first time Virginia State Police Trooper Joey Miller stopped the defendant on Interstate 81.  Trooper Miller had previously stopped the defendant on December 4, 2013; at that time, the defendant was driving northbound on I-81 in the same 2008 blue Kenworth commercial tractor, while pulling a flatbed trailer containing seven large empty green shipping containers.  Trooper Miller stopped the defendant because his tractor trailer had multiple marker lights that were not

functioning. During that stop, the defendant gave Trooper Miller a bill of lading bearing a December 2013 date, but provided no delivery destination address and no shipping address. When the defendant handed the bill of lading to Trooper Miller, the defendant accidentally tore the left side of the document when he removed it from his binder. Trooper Miller did not issue a citation, but instead issued a warning for the defective equipment and allowed the defendant to continue his drive.

The traffic stop at issue in this case occurred three months later on February 3, 2014. Trooper Miller was parked and monitoring northbound traffic on Interstate 81 near mile marker 258.7. Earlier that day, Trooper Miller had received information that the defendant may be travelling northbound on I-81 carrying a large shipment of narcotics. Shortly thereafter, Trooper Miller observed the defendant's vehicle approaching his position from the south. The Trooper immediately recognized the tractor trailer from his previous encounter with the defendant. As the defendant's vehicle passed Trooper Miller's position, Trooper Miller observed that the same marker lights still were not functioning. He also noticed that the truck appeared to be carrying the same green shipping containers the defendant had been hauling in December. To confirm his observations, Trooper Miller drove beside the defendant's vehicle and visually confirmed that the marker lights were indeed defective.

Next, Trooper Miller conducted the traffic stop on the defendant's vehicle based upon a suspected violation of Virginia Traffic Code § 46.2-1003, which prohibits the use of defective equipment on motor vehicles: "[i]t shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is defective or in unsafe condition." Va. Code Ann. §

46.2-1003 (West 1989). Section 46.2-1002 states:

> It shall be unlawful for any person to possess with intent to sell or offer for sale, either separately or as a part of the equipment of a motor vehicle, or to use or have as equipment on a motor vehicle operated on a highway <u>any lighting device</u>, warning device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter or any part or parts tending to change or alter the operation of such device, glass, or other equipment unless of a type that has been submitted to and approved by the Superintendent or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation. Va. Code Ann. § 46.2-1002 (West 1989)(underscore added).

Without delay, Trooper Miller approached the tractor and requested the defendant's driver's license, truck and trailer registration, bill of lading and logbook. When the defendant produced these items, Trooper Miller recognized the bill of lading as the very same bill of lading the defendant had given Trooper Miller during the previous traffic stop outlined above; he recognized the tear on the side of the document as well as the items listed on it. Trooper Miller also recognized the defendant, the tractor trailer, the same defective lights, and the same seven empty green cargo containers from the previous stop. These facts further raised Trooper Miller's suspicions that the defendant may have been engaged in criminal conduct.

In accordance with VSP standard investigatory and safety practices, Trooper Miller asked the defendant to sit in the front passenger seat of the Trooper's patrol vehicle to speak with him further. The defendant was not placed under arrest at this time. When Trooper Miller discussed the apparent violations with the defendant and, more specifically, that he recognized the defendant from the previous traffic stop, the defendant displayed increasingly nervous behavior, and could not explain why he had the same bill of lading he had during the previous traffic stop.

While Trooper Miller was speaking with the defendant, Trooper Jerry Moore arrived on the scene with a canine trained to detect the scent of narcotics. Trooper Moore quickly walked the canine around the defendant's tractor trailer, and the canine alerted to the scent of narcotics near the driver's side door of the tractor. Law enforcement searched the tractor and discovered the 32 kilograms of narcotics hidden in the tractor's battery box and in the equipment box attached to the back of the tractor. At this time, Trooper Miller placed the defendant under arrest. The narcotics had been packaged in 32 individual kilogram-sized packages. Subsequent laboratory analysis by law enforcement confirmed that 21 of the packages contained cocaine and 11 of the packages contained heroin.

## LAW

Temporary detention of an individual during a traffic stop is a seizure under the Fourth Amendment of the Constitution. *Whren v. United States*, 517 U.S. 806, 809 (1996). Observing a suspected traffic violation gives an officer reasonable suspicion to stop a vehicle for as long as it takes to perform a routine traffic stop. *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008); *see also, Whren*, 517 U.S. at 810. To support reasonable suspicion for a stop, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). When examining whether an officer had reasonable suspicion for a traffic stop, courts examine the "totality of the circumstances." *United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989); *See, e.g., United States v. Whitehead*, 849 F.2d 849, 862 (4th Cir. 1988).

In examining the basis of a traffic stop, courts must apply an objective test that

focuses upon whether the officer had the right to stop the vehicle. *Ohio v. Robinette*, 519 U.S. 33, 38 (1996); *Whren*, 517 U.S. at 812; *see also United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993). Even a minor traffic violation provides an objective right to stop a vehicle. *Hassan El*, 5 F.3d at 730. The Fourth Circuit Court of Appeals has explained that "[u]nder the objective test, if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity." *Id.* Thus, any subjective reasons an officer may have for stopping a vehicle are not germane when analyzing the constitutionality of a traffic stop. *Id.*

## ANALYSIS

Trooper Miller had reasonable suspicion to stop the defendant on February 3, 2014. As detailed above, Trooper Miller observed multiple traffic violations when the tractor first passed him traveling northbound on I-81. Specifically, Trooper Miller observed that multiple marking lights on the defendant's vehicle—on both the tractor and the trailer—were not working when it passed his position. To confirm his observations, Trooper Miller then drove beside the defendant's vehicle and again observed the defective lights on the vehicle. After twice observing the defective lights on the defendant's vehicle, Trooper Miller then conducted the traffic stop.

Under the objective test outlined above, the totality of the circumstances shows that Trooper Miller had a reasonable suspicion that the defendant had committed multiple traffic violations. As explained above, Sections 46.2-1002 and 46.1003 of the Virginia Criminal and Traffic Law Manual, together, prohibit the use of defective lighting

equipment on motor vehicles in the Commonwealth of Virginia. Trooper Miller personally observed multiple non-functioning lights on the defendant's vehicle before conducting the traffic stop. Therefore, Trooper Miller had reasonable suspicion sufficient to stop the defendant's vehicle.

After Trooper Miller stopped the defendant, the length of the detention was brief and, therefore, also reasonable. After he stopped the defendant's vehicle, Trooper Miller immediately approached the defendant and began his routine traffic investigation by requesting the defendant's license, registration, logbook and bill of lading. At that time, Trooper Miller noticed that the bill of lading was the same bill of lading the defendant had given Trooper Miller during the traffic stop in December of 2013. Trooper Miller also noticed that the defendant was hauling the same seven empty green containers. Based upon Trooper Miller's professional experience and training, these facts suggested to him that the defendant may be engaged in more significant criminal activity, which would permit a longer period of detention to investigate further and question the defendant.

However, in this case a longer period of detention was not even necessary. Only nine minutes after the initial traffic stop commenced, Trooper Moore ran his narcotics canine around the defendant's vehicle and it quickly indicated the presence of narcotics. Law enforcement then searched the defendant's vehicle and discovered 32 kilograms of narcotics.

## CONCLUSION

The Court should deny the defendant's motion to suppress. As outlined above, Trooper Miller had adequate probable cause to conduct the traffic stop that led to the narcotics that the defendant now seeks to suppress.

Dated: June 15, 2014              Respectfully submitted,

                                                TIMOTHY J. HEAPHY
                                                United States Attorney

                                                <u>s/Grayson A. Hoffman</u>
                                                GRAYSON A. HOFFMAN
                                                Assistant United States Attorney
                                                United States Attorney's Office
                                                116 N. Main Street
                                                Harrisonburg, VA 22802
                                                (540) 432-6636

## **C E R T I F I C A T E**

I hereby certify that a true and correct copy of the foregoing United States' Response to the Defendant's Motion to Suppress has been electronically filed by the court's CM/ECF system on this 15th day of July, 2014.

<u>s/Grayson A. Hoffman</u>
GRAYSON A. HOFFMAN
Assistant United States Attorney
