**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG  DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:14CR00019** |
| | ) | |
| **GEORGE HENRY COVARRUBAIZ** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

George Covarrubaiz, by counsel, has moved to suppress the physical evidence seized during a search of his person and the truck he was driving on February 3, 2014 in Rockingham County, Virginia. He submits this memorandum in support of his argument that law enforcement officers violated the Fourth Amendment in stopping him without legal justification and thereafter searching him and his company's truck.

## Factual Background

Sometime during the morning of February 3, 2014, DEA Special Agent D.P. Cutting advised Virginia State Trooper Keith Miller to be on the lookout for a tractor-trailer traveling north on Interstate 81 and suspected to be transporting illegal drugs.  Agent Cutting gave Trooper Miller a description of the vehicle. Trooper Miller was familiar with the vehicle as he had stopped and unsuccessfully searched it for drugs in December, 2013.  Trooper Miller positioned himself in the median facing northbound traffic near mile marker 258 on Interstate 81 in Rockingham County until he saw a blue tractor-trailer fitting the description approach his location.  It was snowing lightly and was somewhat foggy.  Trooper Miller pulled out of the median, fell in beside the tractor-trailer, activated his lights, and pulled the tractor-trailer over approximately two miles further along the highway.

Trooper Miller saw no erratic driving on the part of the driver, no speeding, no moving violations, no violations of required equipment.  He stopped the vehicle just after noon because, he

testified, he noticed that a few of the optional LED light bulbs on the driver's side tractor portion of the vehicle were not illuminated.  Though his testimony was not always clear, Trooper Miller recounted the following regarding the basis for the stop:  1. As Covarrubaiz, going about 60 mph, approached his location, Trooper Miller noticed that a few of the LED bulbs within the optional light assemblies on the front bumper were out.  See Government Exhibit (GX) 7.[1]  2. As the tractor-trailer passed by him, Trooper Miller noticed that a few more of the bulbs were out on the optional marker light assemblies on the driver's side of the tractor.  3.  To confirm his observations, Trooper Miller pulled alongside Covarrubaiz and saw that indeed a few of the LED bulbs on one or two of the light assemblies on the driver's side of the tractor appeared to be out.  See GX 5 and 6.  Trooper Miller testified that these observations were consistent with his observations in December, 2013 when he stopped Covarrubaiz for the "same defective" lights.  [2]

Following the stop, Trooper Miller examined Covarrubaiz's transport documents, checked his valid license and clean record, and summoned the nearby drug detection dog to conduct a free-air sniff around the tractor-trailer.  The dog alerted and a subsequent search resulted in the seizure of the drugs that are the subject of the charges in this case.

Covarrubaiz asks this Court to suppress this evidence as it was seized in violation of the Fourth Amendment.

---

1  It appears that each light assembly has 12 bulbs and there are 10 assemblies on the bumper (GX 7).

2  He also testified that he noticed that an "amber" light on the driver's side of the tractor was out.  Again, though not clear, it seems that he noticed this after the stop. He also could not say whether power was going to this amber light because there were no illuminated bulbs in the

## ARGUMENT

### I. The Traffic Stop Was Not Legally Justified Because Driving A Vehicle With "Defective" Optional Lights Is Not A Violation of the Law.

**A.    General Fourth Amendment Principles Prohibit Seizures Premised On A Mistake Of Law**

In conducting a traffic stop, police must "have probable cause to believe that a traffic violation has occurred," *Whren v. United States*, 517 U.S. 806, 810 (1996), or a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). An officer's subjective intentions and motivations have no bearing on the Fourth Amendment analysis as long as there was an objective basis for the stop based on reasonable suspicion or probable cause. *Whren*, 517 U.S. at 813. Thus, an officer may constitutionally engage in pretextual stops—stop a driver for a subjective reason unsupported by probable cause or reasonable suspicion but justify the stop for another reason supported by probable cause or reasonable suspicion.

Furthermore, the law allows arresting officers to be *factually* mistaken about the reasons for a stop. The issue comes up most commonly in the context of traffic stops and courts generally hold that an officer may err in stopping someone for a suspected violation of the law, and the stop nonetheless will be upheld so long as the error was a *factual* one and was reasonable. *See, e.g.*, *United States v. Cashman*, 216 F. 3d 582, 587 (7th Cir. 2000)(A police officer's mistaken belief that a windshield crack violated a traffic law did not invalidate the stop even though the crack may not have been sufficiently lengthy, because the Fourth Amendment "requires only a reasonable assessment of the facts not a perfectly accurate one.").

---

amber light assembly.

3

In contrast, and of particular relevance to this case, an officer violates the Fourth Amendment when he stops a driver under a mistaken belief that activity is illegal, though no violation actually addresses the alleged conduct.  This is so because a "mistake of law cannot provide the necessary objective basis for reasonable suspicion or probable cause." *United States v. Ellington*, 396 F. Supp. 2d 695 (E.D. Va. 2005), citing *United States v. Chanthasouxat*, 342 F. 3d 1271 (11th Cir. 2003).  Thus, if an officer stops a driver for conduct that is not illegal, the stop is invalid even if the officer reasonably believed the conduct was illegal.  To use a simplistic example: if an officer stops a driver because the officer believes that the driver's cracked windshield violates the law but there is no law forbidding cracked windshields, the officer has made a mistake of law which invalidates the stop.

The principle, at core, is a logical corollary to the standard to which ordinary citizens are held. "[T]he background presumption"—fundamental to the administration of criminal law—is that "every citizen knows the law" and thus "ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 193 (1998).  If a citizen cannot be heard to complain that he did not know something was against the law, then those who are specially trained in the law should not be heard to justify their violation of the supreme law by claiming that they made a mistake of law but the mistake was "reasonable."[3]  Put simply, "failure to understand the law by the very person charged with enforcing it is not objectively reasonable." *United States v. Tibbetts*, 396 F. 3d 1132, 1138 (10th Cir. 2005).

*Chanthasouxat* is the case most frequently cited for this proposition.  In that case, an officer stopped the defendant after noticing his van did not have a rear view mirror.  The officer believed that Alabama law required all vehicles to have these mirrors.  He testified that he had issued more

---

3  The *Chanthasouxat* court put it this way:  "We also note the fundamental unfairness of holding citizens to 'the traditional rule that ignorance of the law is no excuse' (citation omitted) while allowing those entrusted to enforce the law to be ignorant of it."  *Id*. at 1280.

than 100 tickets for this "violation" over the years.  In fact, however, Alabama law only required drivers to have mirrors allowing them to see to the rear at least 200 feet; such mirrors were not required to be inside the vehicle.   The court agreed that the officer's mistaken view of the law was reasonable but still invalidated the stop, holding that "no matter how reasonable or understandable . . . a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop." *Id.* at 1279.   The court noted that it was joining the Fifth and Ninth Circuits in so holding.  *Id*., citing *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000) (finding the officer's mistaken belief that a car's registration sticker must be visible from the rear invalidated stop) and *United States v. Lopez-Valdez*, 178 F. 3d  282 (5th Cir. 1999) (holding the officer's mistaken belief that a cracked tail light cover violated Texas law invalidated the stop)); accord, *United States v. McDonald,* 453 F. 3d 958, 962 (7th Cir. 2006); *United States v. Nicholson*, 721 F. 3d 1236, 1244 (10th Cir. 2013).  The Supreme Court recently granted a petition for certiorari to determine "whether a police officer's mistake of law can provide the individualized suspicion that the Fourth Amendment requires to justify a traffic stop." *See Heien v. North Carolina*, __ U.S. __ (April 21, 2014). [4]

The Fourth Circuit has not specifically held that an officer's mistake of law invalidates a traffic stop.  However the court has cited *Chanthasouxat* for this proposition, *see, e.g.*, *United States v. Arias*, 213 Fed. Appx. 230 (4th Cir. 2007), and has assumed without deciding, "that an officer's reasonable mistake of law may not provide the objective grounds for reasonable suspicion to justify a traffic stop." *See United States v. McHugh*, 349 Fed. Appx. 824, 828 n. 3 (4th Cir. 2009).

---

4  In *Heien*, the North Carolina Supreme Court had held that an officer's reasonable mistake of law does not invalidate a traffic stop.  The officer in *Heien* stopped the driver because one of two brake lights was not functioning even though the relevant North Carolina traffic law required only one functioning light.

In *United States v. Gore*, 2012 U.S. Dist. LEXIS 64784 (D.S.C. 2012), the court invalidated a stop because of an officer's mistake of law. A police captain, on a personal errand, pulled into a store's parking lot just as the defendant pulled into the lot. The officer noticed that Gore left his truck running as he entered the store and followed Gore into the store to advise him that he was not permitted under South Carolina law to leave an unattended vehicle running. Gore evidently took offense to the Captain's advice and muttered something under his breath. The captain, in turn, took his own offense and ordered Gore out of the store. Gore was eventually charged with driving without a license and felon in possession of a firearm, which was found in an inventory search of the truck. He argued that the evidence should have been suppressed because his removal from the store by the police captain was invalid, as the prohibition on leaving an unattended running vehicle did not apply to private parking lots. The court agreed, holding that the captain's mistaken understanding of the law rendered his demand that Gore leave the store and provide identification violative of the Fourth Amendment.

In sum: Police must have probable cause or reasonable suspicion to justify a stop. Probable cause or reasonable suspicion may be present if a policeman mistakenly believes that a person has violated the law, so long as the mistake is a reasonable one of fact. Probable cause or reasonable suspicion is not present if a policeman accurately perceives the facts but mistakenly believes that the facts establish a violation of the law. That is the situation in this case as:

**B.      Trooper Miller Made A Mistake Of Law in Stopping Covarrubaiz for Defective Lights Because There Is No Requirement In Virginia that Lights Like those Installed on this Vehicle be Functional.**

Virginia Code Section 46.2-1003 makes it "unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in Section 46.2-1002 which is defective or in unsafe condition." Section 46.2-1002 lists various equipment

6

items that must be in working order and pertinently includes "any lighting device . . . for which approval is required by any provision of this chapter."   The statute goes on to specify that lighting subject to the "approval" requirement must comply with certain standards, namely:  be of a "type that has been submitted to and approved by the Superintendent [of the State Police] or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation."

Virginia Code Sections 46.2-1010 through 46.2-1040, address "lights and turn signals" and inform drivers what lights must be of a type approved by the Superintendent and therefore must comply with Section 1002's requirement that they function properly on penalty of being cited for violating Section 1003. None of these statutes requires that a vehicle be equipped with the optional running lights mounted on a tractor. The lights are not headlights, tail lights, brake lights, turn signal lights or any other lights required to be in working order under Virginia law. They are entirely optional lights that one can turn on or off or maintain in any condition without running afoul of Virginia law.  In short, they cannot be "defective" because there is no law requiring that they be functional nor any standard approved by the Superintendent for assessing whether the lights are "defective." That determination is not and cannot be left to the unguided discretion of a police officer, the courts, or the public.  Imagine a world in which the police are empowered to define what is unlawful and enforce this personal choice.  Legislatures pass laws and basic due process requires that a criminal statute give reasonable notice of what it prohibits. *See Rogers v. Tennessee*, 532 U.S. 451 (2001).

Importantly, several Virginia cases have addressed situations similar to that presented in this case and have held that mistaken views of Virginia traffic laws by police officers invalidate traffic stops.

In *Commonwealth v. Gilbert*, 1998 Va. App. LEXIS 474 (Va. Ct. App. 1998), a police officer noticed that the right front marker light on Gilbert's car was not burning.  He stopped Gilbert, discovered that he was an habitual offender, and charged him with driving after having been declared an habitual offender.  Gilbert moved to suppress the evidence against him arguing that his light was not a required light because marker lights are only required for wider vehicles and, therefore, the stop was illegal.  Both the trial court and the court of appeals agreed, with the latter holding that ordinary cars like Gilbert's were not required to have marker lights. Because Gilbert's marker light did not require approval, it could not have been "unlawful" under Va. Code Section 46.2-1003.  The court held, "the trial court properly ruled that the non-functioning marker light, standing alone, did not give Officer Cash a basis for stopping defendant's automobile because the marker light was not required equipment." *Id*. at 4.  The decision, of course, is directly at odds with the position taken by the United States in this case.  After all, if it is true that all lights-- even unrequired lights-- must be functional then *Gilbert* would have come out differently.

*Commonwealth v. Snyder*, 2007 Va. App. LEXIS 307 (Va. Ct. App. 2007),  is another case where the court invalidated a traffic stop based on a mistake of law.  The officer stopped a driver after noticing his right side rear view mirror was broken in violation of Va. Code Section 1003's "defective equipment" prohibition.   The officer agreed that the interior rear view mirror was functional as was the driver's side rear view mirror.  Snyder argued that the stop was illegal because passenger side mirrors are not required under Virginia law, as they do not require approval from the Superintendent of the State Police, and the relevant mirror statute, Section 46.2-1082, only requires

8

one functioning outside rear view mirror.  The Commonwealth responded that the officer's mistake of law was "objectively reasonable."  The court, citing *Chanthasouxat* among other cases, held that a reasonable mistake of law does not justify a traffic stop. *Id.* at 9 ("Appellee's broken passenger side mirror did not violate any applicable statute or ordinance.  In the absence of such a violation, Deputy Green did not have reasonable suspicion to effect the traffic stop of appellee's vehicle.");  *see also Otey v. Commonwealth*, 61 Va. App. 346, 735 S.E. 2d 255, n. 5 (Va. Ct. App. 2012)("Only 'devices and equipment mentioned in Section 46.2-1002' are required to be kept in a non-defective condition under Va. Code section 46.2-1003.  As a result, assuming that some non-functioning optional equipment would cause a vehicle to fail state inspection, such defective optional equipment would not justify a stop under Code section 46.2-1003.").

At least two Virginia Circuit Courts have reached the same conclusion regarding other mistakes of traffic laws.  In *Commonwealth v. Smith*, 79 Va. Cir. 16, 2009 Va. Cir. LEXIS 54 (Greensville County, Va. 2009), the court held that an officer's mistaken belief that the absence of a front license plate on a car registered in a State not requiring front plates was a mistake of law invalidating the stop and subsequent search.

In *Commonwealth v. Najera*, 68 Va. Cir. 17, 2005 Va. Cir. LEXIS 24 (Fairfax County, Va. 2005), a case quite similar to this case, the court applied the mistake of law doctrine where the officer stopped a passenger car with "defective" front running lights.  The court held that because such lights were optional and not subject to approval by the Superintendent of the State Police, "their defective condition is not prohibited by Section 46.2-1003" and "the stop of the defendant by Officer Allen violated *Terry v. Ohio*, 392 U.S. 1 (1968)."  *Id.* at p. 4.  Accordingly, the court suppressed the evidence found in a search following the illegal stop.

In this case, Trooper Miller made a mistake of law by stopping Mr. Covarrubaiz because a few of the optional light bulbs on one side of his tractor were not burning.  No Virginia statute requires these lights.  No Virginia statute requires that these lights be approved.  No Virginia statute requires these lights to function in any particular way.  A driver can turn them off, turn them on, disable them, or do whatever he may choose.  The lights cannot be "defective," as no law requires that they be functional and no statute defines what makes such lights "defective."

To all of this, the government essentially says that this Court should adopt the position articulated by Trooper Miller regarding the defective equipment statute.  According to Trooper Miller, any installed lighting which is turned on, even entirely optional lighting, must function on penalty of violating Section 46.2-1003.  The light can be present but turned off and that is fine.  The light can be absent and that is fine.  But if the light is present and the switch is on, then the optional light must function.  The position is illogical on its face—one can be punished criminally for turning on a light that need not be present?  One can be criminally punished for taking the bulb out of an optional light but turning on the power to the bulb?

More importantly, though, the position flies directly in the face of the holdings in *Gilbert* and *Najera* neither of which could have been decided in the way they were decided if the government's position was correct.  Those cases involved optional "defective" lights and in each instance the court said the driver could not be cited for having defective equipment.

The government's position also is at odds with the plain language of the Virginia statutes.  Those statutes tell citizens that certain lights are required (e.g. headlights), that required lights must meet certain objective standards, and that if they do not then one can be cited for defective equipment.  The government's argument that all turned on lights must function makes the cab driver

10

liable if his roof light is too dim for the officer's taste, same for the pizza delivery boy and a whole host of drivers who install optional lights.  That is not the regimen set forth in Virginia law.

These lights on the defendant's vehicle were optional; they were not required to be present or on (anytime, day or night) or functional.  In stopping Covarrubaiz because a few of these optional light bulbs were out, Trooper Miller made a mistake, a mistake of law, that resulted in an invalid traffic stop.  Evidence derived from an illegal search or arrest is deemed fruit of the poisonous tree and is inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 484-485 (U.S. 1963). Because the subsequent search stemmed directly from the illegal stop, the evidence found during the search must be suppressed.

**II.      Trooper Miller's supposed observations about the lights on Covarrubaiz's vehicle did not give rise to reasonable suspicion or probable cause to stop Covarrubaiz.**

The touchstone of 4th Amendment analysis is reasonableness.  The familiar rule is that: an officer asserting reasonable suspicion or probable cause for a stop must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 US 1, 21 (1968).  The cases note that courts assessing probable cause or  reasonable suspicion should consider all of the circumstances surrounding the stop and make a common sense judgment about whether, at bottom, the officer acted reasonably based on specific observed facts.

This officer did not act reasonably.  He and his fellow law enforcement officers had a hunch that Covarrubaiz was transporting drugs. They had tried and failed once before in trying to find drugs in Covarrubaiz's vehicle. They knew that they did not have sufficient evidence to seek and obtain a warrant from a neutral judicial officer this time.  So they arranged to spot the vehicle and come up

11

with some reason to justify a stop.   That was the mindset of Trooper Miller when he positioned himself in the median and observed what he wanted to observe—the supposed defective light violations that he saw in December 2013.

It is critically important to consider the circumstances of this stop.  It was snowing and foggy, as the videotape of the stop verifies.  Covarrubaiz was traveling at about 60 miles per hour in a tractor trailer kicking up water and snow on the highway.  Trooper Miller was seated in his patrol car with the windshield wipers on. In these conditions, according to Trooper Miller,  he was able to see that a few of the tiny LED bulbs among the 120 bulbs on the ten light assemblies (12 LED bulbs per assembly) on Covarrubaiz's front  bumper were out.  That testimony is inherently incredible.  One is hard pressed to see any unlit bulbs in the color, close-up photograph of the bumper taken right after the stop.  See GX 7.  And we study the photograph from the comfort of our offices with the aid even of a magnifying glass.  It takes little imagination to conclude that Trooper Miller could not have seen what he claims to have seen on the front bumper as this tractor-trailer approached his location.

Trooper Miller also testified  that he saw a few of these tiny bulbs out on the driver's side of the vehicle as it went past him at 60 miles per hour spraying melted snow.  That also is inherently incredible.    A vehicle traveling 60 miles per hour covers 316,800 feet per hour or 88 feet per second.  Trooper Miller, at most, had about a half second to see the tractor part of this tractor trailer as it passed by him in the snow.  That he actually saw a few tiny bulbs out in two different locations (by the battery box and above the fuel tank) among literally hundreds of tiny bulbs on the side of the tractor is simply not believable.  No human being has these powers of observation.

To be sure, as the government noted at the hearing and no doubt will emphasize in response, Trooper Miller drove up next to Covarrubaiz, and from that vantage point he looked over and "confirmed" his observations about the lights on the driver's side of the tractor.  That testimony,

12

however, also is suspect just considering the weather conditions, observation point, size of the bulbs and the fact that Trooper Miller had to both look to his side while going 60 miles per hour in the snow and keep his eyes on the road.  On top of that, the testimony is tainted by the implausibility of Trooper Miller's observations while stationary.  Trooper Miller saw what he wanted to see and not what actually was humanly observable.  He is a flawed, fallible, imperfect human being just like all of us, and he acted unreasonably.

It would be unusual to find that an officer's purported observations were not credible and therefore insufficient to establish reasonable suspicion or probable cause.  And we do not lightly ask this Court to so hold.  It is, however, what we submit occurred in this case.  Trooper Miller and others wanted to search this vehicle.  They had failed to find drugs once before; they believed that drugs would be found this time and they were looking for a reason, any reason, to stop the truck.  That bias, coupled with the inherent incredibility of Trooper Miller's testimony, particularly the supposed observations while stationary, should cause this Court great pause.  This was an illegal pretextual stop.

**Conclusion**

Wherefore, the defendant respectfully seeks that this honorable court:

A.      Suppress all evidence derived from the illegal search and seizure of the defendant's tractor-trailer and his person; and

B.      Grant any further relief that the Court deems reasonable and necessary.

13

Respectfully submitted,

GEORGE HENRY COVARRUBAIZ

By: /s/ Randy V. Cargill
Of Counsel

Randy V. Cargill, Esquire
Assistant Federal Public Defender
Office of the Federal Public Defender
210 1st Street, Suite 400
Roanoke, Virginia  24011
(540) 777-0880 FAX: (540) 777-0890
*Counsel for Defendant George Covarrubaiz*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2014, I served the foregoing Memorandum In Support Of Motion to Suppress upon, Assistant United States Attorney Grayson A. Hoffman, by electronic filing and I caused the original thereof to be filed electronically with Julia Dudley, Clerk, United States District Court, 210 Franklin Road, S.W. Roanoke, VA 24011.

By: /s/Randy V. Cargill
Randy V. Cargill

14