IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | )   Case No. 5:14CR00019 |
| | ) |
| **GEORGE HENRY COVARRUBAIZ** | ) |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

George Covarrubaiz, by counsel, has moved to suppress the physical evidence seized during a search of his person and the truck he was driving on February 3, 2014 in Rockingham County, Virginia. Following an evidentiary hearing, he submitted a memorandum in support of the motion, to which the United States has responded. This submission is a reply to the government's arguments.

At the outset we note that this reply focuses on the mistake of law argument as it is the only argument to which the United States has fully responded.[1] As to the argument regarding the Trooper's observations and whether this court should find that those observations are so insufficiently reliable that they do not constitute reasonable suspicion or probable cause, we stand on our opening memorandum.

### MISTAKE OF LAW

We have offered this logic: 1. An officer who accurately perceives facts but mistakenly believes that those facts establish a violation of the law has violated the Fourth Amendment. We cited several cases for this proposition noting that while the Fourth Circuit has not specifically

---

[1] In our opening memorandum, we noted that pretextual stops are valid under the Fourth Amendment so long as probable cause or reasonable suspicion is present. Defendant's Memorandum at p. 3. We suggested in our second argument, however, that this was an **illegal** pretextual stop because it was based on observations by Trooper Miller that defied powers of perception. *Id*. at p. 11-13. We questioned, for example, how he could possibly have seen a few unlit tiny bulbs on the front bumper of this truck as it was going past him at 60 mph on this snowy day. See Government Exhibit 7. The United States ignores this argument. Instead, it states as its complete response to the second argument, that pretextual stops are lawful if supported by probable cause or reasonable suspicion. Opposition Memorandum at p. 12-13. Obviously, we do not dispute this principle of law and never have.

embraced the principle, the court has cited it approvingly and at least one district court in the Fourth Circuit has specifically so held. *United States v. Gore*, 2012 U.S. Dist. LEXIS 64784 (D.S.C. S.C. 2012).  2. Trooper Miller, assuming that he accurately saw that a few of the optional lights on the defendant's truck were not burning, made a mistake of law in stopping the defendant for these lights, because it is not a violation of law if such lights do not function.  We supported this premise by reference to the Virginia statutes addressing "defective" equipment and the cases interpreting those statutes.  Properly interpreted, we argued, the cases and statutes make clear that only required lights may be the subject of a defective equipment prosecution and because Covarrubaiz's lights were optional lights, he could not be stopped because a few of the bulbs were out. 3. Trooper Miller's mistake of law invalidated the stop and requires suppression of the evidence seized following the stop.

The United States, in response, ignores the major premise, apparently conceding that stops based on mistakes of law violate the Fourth Amendment.  The United States also apparently concedes-- again by omission-- that if Trooper Miller made a mistake of law, suppression is required.  The United States focuses entirely on point two and argues that Trooper Miller did not make a mistake of law in stopping Covarrubaiz for defective lights because it is a violation of the Virginia defective equipment statute to have any non-functioning lights.  The argument fails as it is based on a fundamental misunderstanding of the law and a misreading of the cases.

To begin, it is important to understand the interplay between the two statutes at issue—Va. Code Sections 46.2-1003 and 46.2-1002.  Section 46.2-1003 makes it "unlawful" to operate a motor vehicle in Virginia that has "any device or equipment mentioned in Section 46.2-1002 which is defective or in unsafe condition."  The statute is commonly referred to as the defective equipment statute.  By its terms, the statute does not apply to every piece of "equipment" or "device" on a motor

vehicle; its reach is limited by the words "mentioned in Section 46.2-1002." That statute makes it unlawful to "sell or offer for sale . . . or to use or have as equipment on a motor vehicle any lighting device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter . . . unless of a type that has been submitted to and approved by the Superintendent or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation."

Thus, it is a traffic offense to drive a motor vehicle with a defective piece of equipment but only if the equipment is an item that is sufficiently important that it is subject to the approval requirement. This involves submitting a sample of the device to the Superintendent of the State Police and his testing the device or certifying that the device meets national standards. See Va. Code Section 46.2-1005.

Conversely, it is not a violation of the defective equipment statute to have a nonfunctioning piece of equipment, including lighting, that is not subject to the approval requirement. This is the teaching of the several cases we cited in our opening memorandum, including two cases involving lighting—*Commonwealth v. Gilbert*, 1998 Va. App. LEXIS 474 (Va. Ct. App. 1998) and *Commonwealth v. Najera*, 68 Va. Cir. 17, 2005 Va. Cir. LEXIS 24 (Fairfax County, Va. 2005).

The United States argues that this reading of these statutes is "misguided" because properly read and employing the "last antecedent rule," the approval requirement in Section 46.2-1002 only modifies "other equipment" and not the other antecedents (lighting devices, warning devices etc.) and therefore "all lighting devices on a vehicle must be functional." Opposition Memorandum (hereinafter "memorandum") at p. 13. The argument does not survive a fair reading of the statute.

Va. Code Section 46.2-1002 provides:

> It shall be unlawful for any person to possess with intent to sell or offer for sale, either separately or as a part of the equipment of a motor vehicle, or to use or have as equipment on a motor vehicle operated on a highway any lighting device, warning device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter or any part or parts tending to change or alter the operation of such device, glass, or other equipment unless of a type that has been submitted to and approved by the Superintendent or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation.

If the United States is correct in stating that the "last antecedent rule" applies to this statute, then surely it should apply across the board. Thus, both the phrase "for which approval is required by any provision of this chapter" and the phrase "unless of a type that has been submitted to and approved by the Superintendent or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation" only modify the last antecedent "other equipment." The statute, as to items other than "other equipment" would read as follows:

> It shall be unlawful for any person to possess with intent to sell or offer for sale, either separately or as a part of the equipment of a motor vehicle, or to use or have as equipment on a motor vehicle operated on a highway any lighting device, warning device, signal device, safety glass, or any part or parts tending to change or alter the operation of such device, [or] glass.

Plainly, the legislature did not intend this statute to be read in this absurd way. For so read, the statute would make it unlawful for anyone to sell or offer for sale or use or have on any motor vehicle operated on Virginia highways any lighting device, warning device, signal device, or safety glass.  After all, if the approval limiting clauses apply only to "other equipment," then there is nothing limiting the proscription on the sale or use of the other antecedents.  The "last antecedent

rule" may apply in certain circumstances, but it always yields to common sense or, as the Court has put it, yields when "overcome by other indicia of meaning." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Such is the case here.

The United States is wrong too in stating that precedents support the view that the approval language modifies only "other equipment." Memorandum at p. 10-11. Not one case cited by the United States so holds. Consider, for example, *Javier-Paz v. Commonwealth*, 2013 WL 1120830 (Va. Ct. App. 2013)—a case cited by the United States. The case involved a challenge to a traffic stop for a defective tail light. The driver challenged the stop, arguing that his light was not defective. The court held that the officer reasonably suspected that the tail light was defective under Section 46.2-1003. The court never addressed whether the approval clause applied just to "other equipment" and not to lights. The driver never raised the issue probably because he saw that the tail light statute (Section 46.2-1013) specifically requires that tail lights "be of a type approved by the Superintendent." The case is a garden-variety example of proper application of the defective equipment regime established in Sections 46.2-1003 and 1002—a prosecution for an item subject to the approval requirement that the officer reasonably believed was defective.

Similarly unavailing is the United States' citation to *United States v. McHugh*, 569 F. 2d 569 (E.D. Va. 2008) reversed at 349 Fed. Appx. 824 (4th Cir. 2009). The officer stopped a driver for what the officer believed was a defective tail light. Specifically, he noticed that the tail lights had after- market lens covers and thought the covers were not of a type that had been approved by the Superintendent as required by the tail light statute, Section 46.2-1013. The driver challenged the stop, arguing that his covers had approval stamps as required by the statute and therefore he should not have been stopped for defective equipment. The district court agreed, holding that the officer

made a mistake of law in stopping the driver. The Fourth Circuit reversed, holding that the mistake actually was one of fact, and since it was reasonable given the officer's experience with after-market covers, the stop was valid.

The case is a straightforward application of the mistake of fact line of cases: the officer incorrectly but reasonably perceived the facts; he did not accurately perceive the facts but make a mistake of law. Contrary to the government's assertion, nothing in the district court opinion or the Fourth Circuit opinion in *McHugh* can be cited for the view that the approval modifier applies only to "other equipment." In fact, the district court specifically discussed Section 46.2-1002 and everything it said is consistent with the proposition that the approval modifier applies to all of the antecedents. *McHugh*, 569 F. Supp. 2d at 576-577.

In short, Section 46.2-1002 limits those lighting devices that may be "defective" under Section 46.2-1003 to those for which the approval process is required, and the government's argument to the contrary is simply wrong.

Apparently recognizing this, the United States suggests as an alternative argument that the lights on Covarrubaiz's truck were required "marker lights" under Section 46.2-1017 which are subject to the approval requirement and must be fully functional (memorandum at p. 15-16). The argument is somewhat surprising, given the Trooper's testimony that the lights were optional and, he testified, actually legally functional because at least 50 per cent of the bulbs within each assembly worked—as the photographs confirm.[2] Surprise aside, the argument has no merit.

---

2  Trooper Miller evidently was referring to a provision in the Virginia Administrative Code addressing inspection requirements for trucks and other vehicles over 10,000 pounds. In relevant part, the regulation states that "vehicles that are equipped with multiple LED light (not filament burning) bulbs, they will pass inspection if more than 50 [per cent] of the diode lights are burning." 19 VAC 30-70-560. Here, Trooper Miller testified that he saw the "same lights" out in February 2014 (this stop) that were out when he stopped this defendant in December 2013. Each time more than 50 per cent of the bulbs were lit. By his own admission then, Trooper Miller had no reasonable basis to

Va. Code Section 46.2-1017 is titled "Dimension or marker lights and reflectors, generally." In relevant part, the statute provides that motor vehicles exceeding a width of seven feet must be equipped with "amber lights mounted at the extreme right and left top corners of such vehicle . . . [which] shall be visible in clear weather for a distance of at least 500 feet to the front of such vehicle." The statute goes on to state that "[t]he lights herein required shall be of a type approved by the Superintendent." In plain terms, then, the law states that two amber lights must be in certain spots on wide vehicles and that these two lights must be of a type approved by the Superintendent.

The statute has no bearing on this case. Trooper Miller did not stop Mr. Covarrubaiz because the two amber lights at the top of his truck were not functioning. He made no mention of these lights in his testimony or any of his reports. He spoke of defects in bulbs on light assemblies on the driver's side of the truck and bulbs out on the front bumper. These are not the two amber lights described in Section 46.2-1017. The United States writes (memorandum at p. 15) that it may wish "if necessary" to produce other evidence that the lights at issue here were "marker lights" within the meaning of Section 46.2-1017. The endeavor would be fruitless. Section 46.2-1017 relevantly lists only two lights, does not even specifically call them "marker lights" and, most important, makes clear that these **two lights positioned at the top right and left corners** are the ones required to be of a type approved by the Superintendent. There is no mention of optional extra "marker lights" located anywhere else being subject to the approval requirement. The United States grasps for straws in claiming otherwise.

---

stop Covarrubaiz the second time for he already knew, based on the earlier stop, that these lights would pass inspection. Accordingly, even if stops for perceived violations of inspection standards applicable to optional items are permitted (they are not), this was not a valid stop.

7

It fares no better in asserting that case law supports the odd notion that "extra required lights still must function, and if they do not, they are in violation of Section 46.2-1003 as defective." Memorandum at p. 16. For this, the government cites *Otey v. Commonwealth*, 61 Va. App. 346 (Va. Ct. App. 2012), a case that actually undermines the government's argument.

Otey was stopped because he was driving a car with a top-mounted center brake light that was defective because one of the two bulbs in the light assembly was out. He challenged the stop arguing that the stop was invalid because even though one bulb was out, the other bulb when activated was still visible from 500 feet. He noted that this 500 feet criterion was the standard for brake lights listed in the statute for rear bumper area brake lights (Section 46.2-1014) and suggested that this standard should apply to his center-mounted light.

The court rejected the argument. The court held that Otey's light was governed by Section 46.2-1014.1 which requires vehicles manufactured in 1986 and later to have a "supplemental center high mount stop light of a type approved by the Superintendent" or meeting national standards. Va. Code Section 46.2-1014.1. Because this specific statute addressing the light at issue did not list the 500 feet standard, the court held that it would look to the common definition of "defective" by which a light with one of two bulbs out was "defective" or "faulty." *Otey*, 61 Va. App. At 350.

*Otey*, thus, is another example of a straightforward application of the defective equipment statute. First, one asks whether the item is covered by Section 46.2-1002, i.e. whether the item is subject to the approval process. This item (a top-mounted center brake light) qualified because the statute specifically said that it must be of a type approved by the Superintendent. Second, one asks whether the statute lists any specific criteria for assessing whether the item is defective. This statute did not. Third, if no criteria are set forth in the statute, one goes to the common understanding of the

term "defective" and in the context of assessing the validity of a stop, asks whether the officer reasonably believed that the item was defective.

*Otey* does not support the government's extraordinary claim that an "extra required" (the words are mutually exclusive) light may be the subject of a prosecution under Section 46.2-1003. The statute only applies to required items--those subject to the approval requirement. Extra unrequired items, like the lights at issue in this case, may not be the basis for a stop for defective equipment. As the court in *Otey* made clear:

> Only 'devices and equipment mentioned in Section 46.2-1002' are required to be kept in a non-defective condition under Code Section 46.2-1003. As a result, assuming that some non-functioning optional equipment would cause a vehicle to fail state inspection, such defective optional equipment would not justify a stop under Code Section 46.2-1003.

*Otey*, 61 Va. App.351, n. 5; accord, *Commonwealth v. Snyder*, 2007 Va. App. LEXIS 307 (Va. Ct. App. 2007)(broken passenger side mirror may cause a vehicle to fail state inspection but cannot be the basis for a defective equipment stop because statute requires only two functioning rear view mirrors which were present on vehicle).

The United States' last contention is that even if the lights at issue were not "marker lights," this court should accept that Trooper Miller made a reasonable mistake of fact in concluding that they were marker lights and therefore acted reasonably in stopping Covarrubaiz because he believed they were defective. First, Trooper Miller did not testify that he believed these were defective required marker lights. He said that they were defective optional lights. If one is going to make a reasonable mistake of fact argument, the starting point ought to be the officer's testimony that he made a factual mistake. Second, as discussed, the statute addressing marker lights describes two amber lights at the top left and right of a truck. If Trooper Miller wishes to change his testimony and

say now that he mistakenly thought the tiny bulbs on the side of Covarrubaiz's truck next to the battery box and above the fuel tank were the amber lights on the top of the truck, then one supposes he may do so. But that would be an unreasonable mistake of fact by any definition of that term, and unreasonable mistakes of fact cannot constitute probable cause or reasonable suspicion.

All of the United States' arguments in opposition to the position that Trooper Miller made a mistake of law in stopping this defendant for these "defective" optional lights fail under the weight of the statutes and controlling precedent. It is not a violation of the Virginia defective equipment statute to have a "defect" in optional lights. Trooper Miller violated the Fourth Amendment when he stopped this defendant on that basis.

## Conclusion

Wherefore, the defendant respectfully seeks that this honorable court:

A. Suppress all evidence derived from the illegal search and seizure of the defendant's tractor-trailer and his person; and

B. Grant any further relief that the Court deems appropriate and necessary.

Respectfully submitted,

GEORGE HENRY COVARRUBAIZ

By: /s/ Randy V. Cargill
Of Counsel

Randy V. Cargill, Esquire
Assistant Federal Public Defender
Office of the Federal Public Defender
210 1st Street, Suite 400
Roanoke, Virginia 24011
(540) 777-0880 FAX: (540) 777-0890
*Counsel for Defendant George Covarrubaiz*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 11th day of August, 2014, I served the foregoing Reply Memorandum In Support Of Motion to Suppress upon, Assistant United States Attorney Grayson A. Hoffman, by electronic filing and I caused the original thereof to be filed electronically with Julia Dudley, Clerk, United States District Court, 210 Franklin Road, S.W. Roanoke, VA 24011.


                                                                            By: /s/Randy V. Cargill
                                                                                Randy V. Cargill