IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 5:14CR00019 |
| | ) | |
| GEORGE HENRY COVARRUBAIZ | ) | |

**DEFENDANT'S MEMORANDUM ON SPECIFIED ISSUE**

George Covarrubaiz, by counsel, has moved to suppress the physical evidence seized during a search of his person and the truck he was driving on February 3, 2014 in Rockingham County, Virginia. Following an evidentiary hearing and briefing, the court has taken the motion under advisement pending resolution of the government's request that it be given the opportunity to prove that the "defective"[1] lights at issue in this case were in fact "marker lights, which are required, and for which approval is required, under Section 46.2-1017" (Government's Memorandum at p. 15). The court has given the parties the opportunity to "file additional briefs on the issue" and directed that "[s]hould additional evidence or oral argument be necessary on the issue of Section 1017's applicability, the parties should so advise the court" (Memorandum Opinion at p. 9).

Defendant submits this memorandum, as directed, on this question: Were the "defective" lights on the defendant's truck required marker lights--i.e., marker lights--for which approval is required under Va. Code Section 46.2-1017?

---

[1] Defective is in quotation marks because, as we noted in our reply memorandum (at p. 6), Trooper Miller testified that the lights in fact were not defective because more than 50 per cent of the LED bulbs in the assemblies were functioning. As we also noted (*id*. at p. 6, footnote 2), because Trooper Miller already knew this before he stopped Covarrubaiz on this occasion (based on the earlier stop for the exact "same" "defective" lights), he had no justification for this stop even under the interpretation of the law advanced by the United States which this court has now rejected.

## **ARGUMENT**

Va. Code Section 46.2-1017 provides in pertinent part:

> All motor vehicles, trailers, or semitrailers exceeding seven feet in width or the widest portion of which extends four inches beyond the front fender extremes shall be equipped with amber lights mounted at the extreme right and left front top corners of such vehicle. Each such light shall be visible in clear weather for a distance of at least 500 feet to the front of such vehicle. Such vehicles shall also be equipped with red lights mounted at the extreme right and left rear top corners of such vehicle. Each such light shall be visible in clear weather for at least 500 feet to the rear of such vehicle. Any tractor truck, however, need not be equipped with rear red dimension or marker lights. If the front or the rear of such vehicle is not the widest portion of the vehicle, the dimension or marker lights required in this section shall be mounted on the widest portions of the vehicle with the amber lights herein required visible from the front as herein required and the red lights herein required visible from the rear as herein required. The lights herein required shall be of a type approved by the Superintendent.

The statute, in plain terms, requires that those vehicles wider than ordinary passenger vehicles have "dimension" or "marker" lights positioned in particular places so that drivers to the front and rear will know that the vehicle to the front or rear is a wide vehicle.

The "defective" lights at issue in this case are not the "marker" or "dimension" lights described in Section 1017 and subject to the approval requirement. The lights at issue here, as described by Trooper Miller and depicted in the photographs, were the few tiny unlit bulbs in light assemblies on the driver's side of the tractor next to the battery box and above the fuel tank. These lights were not positioned to mark the dimensions of the tractor trailer and warn motorists to the front and rear of those dimensions. The lights were not at the top front or rear corners of the tractor or trailer. The lights could be seen neither from the front (see Government Exhibit 9) nor from the

rear (video); they were not intended to be so seen, and no reasonable person could say otherwise. Put simply, the United States is wrong in asserting that these lights are required marker lights within the meaning of Va. Code Section 1017.

It is true, as the court noted, that Trooper Miller called the lights "marker" lights, but his nomenclature does not control on this question of law.

Furthermore, it is quite clear that Trooper Miller was not using the term "marker light" to express his view that these lights were the required lights described in Section 1017. He actually testified to the opposite. He repeatedly agreed that these "defective" lights were "optional" lights. He agreed that the lights were "extra" lights. He agreed that a driver could turn them on or off anytime, disable them completely or remove them entirely---all without running afoul of the law. He even agreed that the lights were akin to the decorative Christmas lights that some drivers install on their vehicles. Trooper Miller did not view these lights as required "marker" lights; that is a position asserted by the United States **after** it had a full and fair opportunity and the motivation to elicit all the evidence bearing on the lawfulness of this search at the evidentiary hearing, and after it evidently concluded that some new argument **at odds with the government's evidence** might be needed to salvage this unlawful search.

Any conceivable doubt about the fact that Trooper Miller was not stopping this defendant for defective required marker lights vanishes when one examines his conduct preceding the stop. He did not stop Covarrubaiz upon seeing the front and back of the tractor trailer. He pulled alongside Covarrubaiz and looked directly at or below eye level so he could see the "defective" lights on the side of the tractor. Would he have done this to see whether the marker lights described in Section 1017 (required to be positioned at the top of the vehicle and visible from the front and rear) were

functional? Of course not. And given Trooper Miller's extraordinary powers of observation (he testified that he saw a few LED bulbs out on the front bumper as the truck passed by him in the snow at 60 miles per hour), one can safely bet that any defect in the required marker lights would have been noted by Trooper Miller and would have been asserted as a basis for this stop at the appropriate time. It is far too late now to assert a new basis for this stop—one finding no support in the evidence.

The United States told this court that all lights on a motor vehicle, including optional lights, must be functional under Virginia law. It said that this conclusion followed from the plain language of the applicable statutes and application of the "last antecedent" rule. It was wrong. It told this court that "Virginia case law supports this interpretation that all lighting devices on a vehicle must be functional" (memorandum at p. 13) and cited a litany of cases supposedly supporting this assertion. It was wrong. It now seeks to shift gears and say that these lights actually were required lights even though Trooper Miller stated the opposite and even though the relevant statute undermines this assertion. Again, it is wrong.

## CONCLUSION

In *Whren v. United States*, 517 U.S. 806, 813 (1996), the Court held that an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Since *Whren* was decided, it is now commonplace to see officers do the following: stop a vehicle for some technical reason (window tinting, "obscured" license plate, dangling air freshener, etc.) that would barely raise the eyebrow of an officer on routine patrol, and then use the stop as a pretext[2] to gather

---

2 Here is how the Fourth Circuit has reacted to the pattern of taking disparate "facts" like "nervousness" and arguing that these facts justify pretextual searches: "[W]e are deeply troubled by the way in which the Government attempts to spin these largely mundane acts into a web of deception ... the Government cannot rely upon post hoc rationalizations to validate those seizures

enough cause to search the vehicle, such as calling in the closely positioned drug dog, observing that the driver is "nervous" or "breathing heavy," etc.  The case at hand follows the familiar pattern but hits the roadblock that Trooper Miller chose the wrong pretext. He stopped Mr. Covarrubaiz for something that is not a violation of the law, and, try as it might, the United States does not and cannot change that reality.    We respectfully ask that this court grant the motion to suppress.

                                                  Respectfully submitted,

                                       GEORGE HENRY COVARRUBAIZ

                                                   By: /s/ Randy V. Cargill
                                                             Of Counsel

Randy V. Cargill, Esquire
Assistant Federal Public Defender
Office of the Federal Public Defender
210 1st Street, Suite 400
Roanoke, Virginia  24011
(540) 777-0880 FAX: (540) 777-0890
*Counsel for Defendant George Covarrubaiz*

## CERTIFICATE OF SERVICE

     I hereby certify that on the 4th   day of September, 2014, I served the foregoing Memorandum on Specified Issue upon, Assistant United States Attorney Grayson A. Hoffman, by electronic filing and I caused the original thereof to be filed electronically with Julia Dudley, Clerk, United States District Court, 210 Franklin Road, S.W. Roanoke, VA 24011.

                                                   By: /s/Randy V. Cargill
                                                          Randy V. Cargill

---

that happen to turn up contraband."  *United States v. Foster*, 634 F. 3d 243, 249 (4th Cir. 2011).