IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) | |
|                                                             ) | |
| v.                                                         ) | Case No. 5:14CR00019 |
|                                                             ) | |
| GEORGE HENRY COVARRUBAIZ     ) | |

### DEFENDANT'S OPPOSITION TO THE UNITED STATES' REQUEST TO REOPEN THE EVIDENTIARY HEARING TO ALLOW ADDITIONAL EVIDENCE BEYOND THAT SPECIFIED IN THIS COURT'S MEMORANDUM OPINION

George Covarrubaiz, by counsel, has moved to suppress the physical evidence seized during a search of his person and the truck he was driving on February 3, 2014 in Rockingham County, Virginia. The court held an evidentiary hearing on the motion on July 17, 2014. At that hearing, defendant, through counsel, argued that the search was unlawful, because law enforcement officers did not have a warrant authorizing the search, and no exception to the warrant requirement applied. The United States, in response, presented evidence and argued that one exception to the warrant requirement applied, namely: Trooper Miller lawfully stopped Mr. Covarrubaiz for the traffic violation of driving with defective lights and that probable cause to search developed in the course of the lawful stop. Trooper Miller, the only government witness, testified that the sole basis for his stop of the defendant was the defective lights. The United States, consistent with this testimony, argued that this was the only basis for the stop—both at the hearing and in its written submissions to this court before and after the hearing.

On August 28, 2014, this court issued a memorandum opinion in which it largely rejected the United States' argument but took the motion to suppress under advisement pending resolution of a single, narrow question: whether, as suggested by the government, the "defective" lights at issue were the required "marker lights" described in Va. Code Section 46.2-1017. This court gave the parties "leave to file additional briefs on the issue" and directed that "[s]hould additional evidence

or oral argument be necessary on the issue of Section 1017's applicability, the parties should so advise the court." Memorandum Op. of Aug. 28, 2014 at p. 9.

Mr. Covarrubaiz, by counsel, addressed the specified issue in a memorandum filed on September 4, 2014 and has notified the Deputy Clerk that the defendant is not requesting a hearing on the matter.

For its part, the United States has filed a memorandum styled as a "Second Memorandum in Response to Defendant's Motion to Suppress," in which it addresses the issue specified by the court. It also asserts, however, a whole new theory which it claims justifies this stop. Specifically, it argues that this stop was justified under the collective knowledge doctrine, noting that wiretap evidence accumulated by law enforcement "led law enforcement to stop the defendant's vehicle on February 3, 2014" and "[t]his probable cause is imputed to Trooper Miller under the collective knowledge doctrine." United States' Second Memorandum at p. 1.

Mr. Covarrubaiz hereby objects to the court's consideration of this new justification for the stop.[1] First, this new theory and evidence should not be considered, as both are beyond the scope of the court's specific directive in its memorandum opinion. The court granted leave to file written argument and present evidence bearing on the government's assertion that the lights at issue were

---

1 There is scant caselaw in the Fourth Circuit addressing the circumstances under which the court should allow the reopening of a suppression hearing. The court has noted that the district court's decision on the question is reviewed under an abuse of discretion standard for clear error. See *United States v. McCoy*, 348 Fed. Appx. 900 (4th Cir. 2009). The most frequently cited case on the issue appears to be *United States v. Kithcart*, 218 F. 3d 213, 219 (3rd Cir. 2000) where the court held that a district court erred in allowing the government to present additional evidence on a suppression issue following remand, noting that "'courts should be extremely reluctant to grant reopenings'" (quoting *United States v. Blankenship*, 775 F. 2d 735, 740 (6th Cir. 1985)) and emphasizing that the "district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted."

"marker" lights. This new theory and evidence (submitted by way of attaching exhibits to a pleading) go far beyond the scope of what the court has allowed the parties to address.

Second, the government waived this argument by failing to raise it at the suppression hearing. It had a full and fair opportunity and ample motivation to assert this theory and present evidence supporting the theory and failed to do so. It asserts that it "could not reveal this additional evidence of probable cause at an earlier time because the other members of the drug trafficking organization were not yet in custody; revealing this evidence or even the existence of the wiretap investigation earlier would have jeopardized the investigation and the safety of those involved." United States' Second Memorandum at p. 1. Yet, the United States did not request that the hearing be postponed or closed to the public. Nor did the United States allude to any other possible justifications for this stop at the hearing or in written submissions.[2] Indeed, the United States consistently and exclusively relied upon the single basis for the stop described by Trooper Miller at the hearing and elicited from him as the only basis for stopping Mr. Covarrubaiz: the defective lights. It is one thing to have two justifications for a stop and present only one for tactical reasons explicitly leaving open the possibility of presenting the other theory. It is quite another thing to never mention the possibility of another theory and describe the theory presented as the sole basis for the stop. The former, though unusual, may be understandable; the latter smacks of gamesmanship.

---

2 A sampling of the United States' written representations to the court: 1. "The traffic stop that led to the discovery of these drugs was based upon reasonable suspicion of unlawful conduct; the Trooper observed that the defendant's vehicle had multiple defective lights." Response to Defendant's Motion to Suppress dated 7/15/14 at p. 1; United States' Response to Defendant's Memorandum in Support of Motion to Suppress dated 8/4/14 at p. 1. 2. "Trooper Miller conducted the traffic stop on the defendant's vehicle based upon a suspected violation of Virginia Traffic Code Section 46.2-1003, which prohibits the use of defective equipment on vehicles." *Id*. at p. 2; *Id*. at p. 3. Similarly, Trooper Miller in his written reports, just as in his testimony, described this as a traffic stop based solely on his observation of allegedly defective lights.

Furthermore, the United States' justification for failing to present this theory at the suppression hearing (safety and jeopardizing the investigation concerns arising out of revealing the wiretaps) is undermined by the factual record. First, the wiretaps **ended** by April 2, 2014, more than three months before the suppression hearing in this case, as DEA Special Agent Kevin Burrell noted in a report dated April 4, 2014.

Second, and more importantly, the United States, in *unsealed* court filings, made known "the existence of the wiretap investigation" almost two full months before the suppression hearing in this case. Here is what DEA Task Force Officer Paul Loconti wrote in his unsealed application for a warrant to search Mr. Covarrubaiz's cell phone dated May 22, 2014:

> DEA LAFD [Drug Enforcement Agency Los Angeles Field Office] applied for and received a state (California) authorized wire-tap permitting agents to monitor calls to and from a cell phone used by AMARDOR (sic) [the supposed drug kingpin]. During the month January 2014, LAFD DEA intercepted calls between AMADOR and George COVARRUBAIZ (hereinafter referred to as COVARRUBAIZ), previously identified as a driver for Jack Rabbit Express. Through a series of calls between AMADOR and COVARRUBAIZ, agents learned that COVARRUBAIZ was directed to transport a "cover load" along with kilogram quantities of both heroin and cocaine to customers on the East Coast.[3]

See Search Warrant and Application (para. 15 quoted above) in Case No. 1:14SW295, United States District Court for the Eastern District of Virginia attached hereto as Exhibit 1. It rings a bit hollow for the United States to tell this court that it could not, at the July suppression hearing in this case, have discussed this wiretap evidence because it would have "jeopardized the investigation and the

---

[3] Incidnetally, one will search the wiretap transcripts provided by the government and attached to its second memorandum in vain for substantiation of this representation that Mr. Covarrubaiz was directed to transport heroin and cocaine. In fact, though beyond the scope of this submission, a careful review of the transcripts would reveal the flaws in the government's assertions that there was reason to conclude that Mr. Covarrubaiz was transporting drugs based on this wiretap evidence.

safety of those involved." For not only did it *not* file its warrant application under seal, it also did not request nor obtain permission that the warrant be kept secret, as the law allows when disclosure would "endanger the life or physical safety of an individual" or "seriously jeopardiz[e] an investigation." 18 USC Section 2705(b)(1) and (5). In short, the United States' claim that all of this was secret and could not have been revealed at the suppression hearing, closed or open, is belied by the facts.

Finally, it is important to consider this new theory in context. It comes after this court largely rejected the justification for this stop so vigorously argued and **exclusively** relied upon at the suppression hearing and in court filings. Whether the United States deliberately decided not to assert the justification at the hearing[4] or simply made a mistake in failing to assert it, it should not be permitted to assert the theory and present new evidence at this point. Waiver shuts the courthouse doors on defendants routinely-- frequently at the behest of the United States and all too frequently even in cases involving the death penalty. There is no reason the doctrine should not apply equally to the United States. This court, every court, deserves the parties' best efforts and information. A party that chooses not to assert a theory or present supporting evidence must live with that choice— even if (if not *especially* if) that party is the United States.

## CONCLUSION

Courts turn a blind eye to many questionable police tactics in the name of justice. Police may lie to suspects to trick them into confessing. A police officer may profile motorists and act on his basest instincts and prejudices, so long as the officer sees a violation of some traffic law justifying a

---

[4] We do not address the merits of the United States' "collective knowledge" argument here. We will have much to say about the argument should this court allow the United States to assert it.

stop. To this list of practices, the United States here asks this court to endorse the following: police may testify under oath that *the* (not *a*) basis for a stop was a traffic violation; the prosecution may argue that this was *the* (not *a*) basis for the stop, but later, the prosecution may switch to a new theory that it could have and should have presented to the court when it sponsored the testimony of the witness who testified to the first and only proffered justification for the stop. This court should not tolerate such a practice. For the reasons stated, the court should reject the United States' request to reopen the evidentiary hearing and present new evidence on a theory not pursued when it had ample opportunity to do so at the suppression hearing in this case.

Respectfully submitted,

GEORGE HENRY COVARRUBAIZ

By: /s/ Randy V. Cargill
Of Counsel

Randy V. Cargill, Esquire
Assistant Federal Public Defender
Office of the Federal Public Defender
210 1st Street, Suite 400
Roanoke, Virginia 24011
(540) 777-0880 FAX: (540) 777-0890
*Counsel for Defendant George Covarrubaiz*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2014, I served the foregoing Opposition to Reopening the Evidentiary Hearing upon Assistant United States Attorney Grayson A. Hoffman, by electronic filing and I caused the original thereof to be filed electronically with Julia Dudley, Clerk, United States District Court, 210 Franklin Road, S.W. Roanoke, VA 24011.

By: /s/Randy V. Cargill
Randy V. Cargill